Megan O'Neill (SBN 220147)
  moneill@dtolaw.com
DTO LAW
915 Wilshire Boulevard, Suite 1950
Los Angeles, California 90017
Telephone: (213) 335-6999
Facsimile:  (213) 335-7802

Richard Z. Lee (SBN 338126)
  rlee@dtolaw.com
DTO LAW
702 Marshall Street, Suite 640
Redwood City, California 94063
Telephone: (415) 630-4100
Facsimile:  (415) 630-4105

Attorneys for Defendant
GENERAL MILLS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE CANTU, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>     v.<br><br>GENERAL MILLS, INC., a Delaware company,<br><br>             Defendant. | Case No. 2:24-cv-10664-GW (PDx)<br>Hon. George H. Wu<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT GENERAL MILLS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT** |

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................. 1

II.   RELEVANT FACTUAL BACKGROUND ................................. 2

    A.    General Mills's Disclosures on Cookie Mix Packaging ................... 2

    B.    Plaintiff's Slack-Fill Allegations ........................................ 5

    C.    Procedural History ........................................................ 6

III.  LEGAL STANDARD ............................................................ 6

IV.   ARGUMENT ..................................................................... 7

    A.    No Reasonable Consumer Would Be Deceived by the Cookie Mix Packaging, Which Discloses the Expected Cookie Yield. ................ 7

        1.    As the Ninth Circuit has recognized, reasonable consumers do not expect a product's contents to be identical to the size of the packaging. ..................................................... 8

        2.    Courts regularly dismiss slack-fill claims where, as here, the packaging discloses expected yield or product count. ........... 9

        3.    The cookie mix's pliable packaging enables consumers to detect any slack-fill. ........................................... 11

    B.    Plaintiff Cannot Plead an Actionable Misrepresentation or Justifiable Reliance to Support His Common Law Fraud Claim. ..................... 12

    C.    Plaintiff Fails to Adequately Plead that Any Slack-Fill in the Product's Packaging Is Nonfunctional. ............................................ 14

    D.    Plaintiff Lacks Standing to Seek Injunctive Relief ......................... 18

    E.    Plaintiff's Claims Do Not Satisfy Rule 9(b)'s Heightened Pleading Standard. ........................................................... 20

V.    CONCLUSION ................................................................. 22

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................... 6, 7, 12

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................. 7, 17

*Bush v. Mondelez Int'l, Inc.,*
   2016 WL 5886886 (N.D. Cal. Oct. 7, 2016) ..................................... 9

*Bush v. Mondelez Int'l, Inc.,*
   2016 WL 7324990 (N.D. Cal. Dec. 16, 2016) ................... 13, 16, 17

*Buso v. ACH Food Cos.,*
   445 F. Supp. 3d 1033 (S.D. Cal. 2020) ........................ 10, 11, 16, 18

*Buso v. Vigo Importing Co.,*
   2018 WL 6191390 (S.D. Cal. Nov. 28, 2018) ......................... 11, 18

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ........................................................................ 19

*Cordes v. Boulder Brands USA, Inc.,*
   2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) ......................... 16, 19

*Cordes v. Boulder Brands USA Inc.,*
   2019 WL 1002513 (C.D. Cal. Jan. 30, 2019)................................. 17

*Culver v. Unilever U.S., Inc.,*
   2021 WL 10382839 (C.D. Cal. Jan. 21, 2021)................................ 22

*Daniel v. Mondelez Int'l, Inc.,*
   287 F. Supp. 3d 177 (E.D.N.Y. 2018)...................................... 13, 14

*Daniel v. Tootsie Roll Indus., LLC,*
   2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018) ................................. 14

*Davidson v. Kimberly-Clark Corp.,*
   889 F.3d 956 (9th Cir. 2018).................................................... 19, 20

ii

*Ebner v. Fresh, Inc.,*
    838 F.3d 958 (9th Cir. 2016) ................................................................ 7, 8, 12

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ................................................................................. 19

*Gamez v. Summit Nats. Inc.,*
    2022 WL 17886027 (C.D. Cal. Oct. 24, 2022) ........................................ 20, 22

*Jackson v. Gen. Mills, Inc.,*
    2019 WL 4599845 (S.D. Cal. Sept. 23, 2019) ........................................ 14, 16

*Jackson v. Gen. Mills, Inc.,*
    2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) ............................. 17, 19, 20, 21

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ......................................................... 20, 21, 22

*Kennard v. Lamb Weston Holdings, Inc.,*
    2019 WL 1586022 (N.D. Cal. Apr. 12, 2019) ............................................. 11

*Lavie v. Procter & Gamble Co.,*
    105 Cal. App. 4th 496 (2003) ..................................................................... 8

*Martinez-Leander v. Wellnx Life Scis., Inc.,*
    2017 WL 2616918 (C.D. Cal. Mar. 6, 2017) ............................................ 9, 16

*Nacarino v. KSF Acquisition Corp.,*
    642 F. Supp. 3d 1074 (N.D. Cal. 2022) ...................................................... 13

*Rattagan v. Uber Techs., Inc.,*
    17 Cal.5th 1 (2024)............................................................................. 12, 13

*Reider v. Immaculate Baking Co.,*
    2018 WL 6930890 (C.D. Cal. Nov. 8, 2018) ............................................ 9, 10

*Robles v. Gojo Indus., Inc.,*
    2022 WL 2163846 (C.D. Cal. Mar. 16, 2022) ............................................. 13

*Schwarz v. United States,*
    234 F.3d 428 (9th Cir. 2000) ...................................................................... 7

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp.,*
    733 F.3d 1251 (9th Cir. 2013)...................................................................... 7

*Shaw v. Hahn*,
    56 F.3d 1128 (9th Cir. 1995) ................................................................ 7

*Sinatro v. Mrs. Gooch's Natural Food Markets, Inc.*,
    2023 WL 2324291 (N.D. Cal. Feb. 16, 2023) ................................. 11

*Skinner v. Ken's Foods, Inc.*,
    53 Cal. App. 5th 938 (2020) ................................................................ 7

*Stewart v. Kodiak Cakes, LLC*,
    537 F. Supp. 3d 1103 (S.D. Cal. 2021) ............................... 10, 12, 20

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................................................ 19

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009) ......................................................................... 13

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..................................................... 20, 21

*Whitaker v. SQS LA LLC*,
    2020 WL 3802908 (C.D. Cal. Apr. 1, 2020) ................................... 18

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ........................................................... 18

*Whiteside v. Kimberly Clark Corp.*,
    108 F.4th 771 (9th Cir. 2024) .............................................................. 7

**Statutes**

21 U.S.C. § 301 ...................................................................................... 14

21 U.S.C. § 343 ........................................................................... 3, 14, 15

21 U.S.C. § 343-1 .................................................................................. 14

28 U.S.C. § 1332 ...................................................................................... 6

28 U.S.C. § 1441 ...................................................................................... 6

28 U.S.C. § 1446 ...................................................................................... 6

28 U.S.C. § 1453 ...................................................................................... 6

iv

Cal. Bus. & Prof. Code § 12606.2 ................................................................. 14, 16

Cal. Civ. Code § 1750 ....................................................................................... 6

Cal. Civ. Code § 1770 ................................................................................. *passim*

Cal. Civ. Code § 1783 ....................................................................................... 5

Cal. Civ. Proc. Code § 338(d) ......................................................................... 5

Cal. Health & Safety Code § 110100 ............................................................. 15

**Other Authorities**

21 C.F.R. § 100.100 ................................................................... 14, 15, 17, 18

21 C.F.R. § 101.7(a) (2016) ............................................................................ 2

Fed. R. Civ. P. 9(b) ......................................................................... 16, 20, 21, 22

Fed. R. Civ. P. 12(b)(6) ............................................................................. 6, 18

*Misleading Containers; Nonfunctional Slack-Fill,*
    58 Fed. Reg. 64123-01 (Dec. 6, 1993) ........................................................ 15

MEM. P. & A. ISO DEF. GENERAL MILLS, INC.'S MOTION TO DISMISS PL.'S FAC

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

Defendant General Mills, Inc. ("General Mills") manufactures Betty Crocker Chocolate Chip Cookie Mix, a dry goods product that, when combined with butter and eggs and baked in the oven, makes chocolate chip cookies.  The cookie mix is sold in sealed, pliable plastic pouches that are flexible to the touch and may comfortably be handled by consumers.  Along with an image of the finished cookies, the packaging displays useful information about the mix, including nutrition facts and baking instructions.  As required by federal food labeling law, the packaging specifically discloses the mix's net weight, the number of servings per pouch, and the size of each individual serving (in tablespoons, grams, and corresponding number of baked cookies).  The packaging also contains a conspicuous yield chart explicitly stating how many cookies the mix will make.  The packaging's manipulable material and clear disclosures as to quantity ensure consumers understand the amount of product they are purchasing, whether in terms of the mix itself or the yield of baked cookies.

Plaintiff Jesse Cantu ("Plaintiff") nevertheless claims he was deceived as to the amount of product in each pouch due to the presence of "slack-fill," or empty space, within the packaging.  Slack-fill is regulated under federal and California law, which recognize that slack-fill is often necessary and expressly authorize its presence for various reasons (including to protect a package's contents, to accommodate unavoidable product "settling," and to prevent product spillage).  Slack-fill is therefore actionable only when it is shown to be *nonfunctional*.

Plaintiff contends, in vague and conclusory terms, that the cookie mix's slack-fill misled him into paying more for the product than he otherwise would have and serves no functional purpose.  Plaintiff relies on these generic allegations to assert claims for common law fraud and for violation of California's Consumers Legal Remedies Act ("CLRA").

1

1    The Court should dismiss the First Amended Class Action Complaint
2 ("FAC") for several independent reasons.  *First*, Plaintiff fails to state a claim
3 because no reasonable consumer would be deceived by the cookie mix packaging,
4 which plainly discloses the product's net weight, serving information, and the
5 number of cookies each pouch will yield.  District courts throughout the Ninth
6 Circuit have consistently held that such disclosures, along with the packaging's
7 pliability, are sufficient as a matter of law to defeat slack-fill claims.

8    *Second*, Plaintiff's claim for common law fraud separately fails because he
9 cannot identify any actionable misrepresentation on the cookie mix packaging, *i.e.*,
10 one that is literally false.  And, given the packaging's multiple disclosures of
11 product quantity, he cannot plead justifiable reliance.

12    *Third*, neither of Plaintiff's claims survives dismissal because they are both
13 preempted by federal law, which expressly permits functional slack-fill and
14 requires plaintiffs to allege facts plausibly showing that none of the regulatory
15 "safe harbors" for slack-fill apply.  Plaintiff fails to allege such facts.

16    *Fourth*, Plaintiff's claim for injunctive relief should be dismissed for lack of
17 Article III standing given he cannot plausibly show he will be injured by the
18 cookie mix packaging in a similar way in the future.

19    *Finally*, Plaintiff fails to provide any meaningful detail as to (i) when and
20 where he purchased the cookie mix, (ii) which version(s) of the mix he purchased,
21 or (iii) how much he paid for the mix.  His claims, which both sound in fraud, are
22 therefore not pled with the requisite particularity.

23 ## II.    RELEVANT FACTUAL BACKGROUND

24 ### A.    General Mills's Disclosures on Cookie Mix Packaging

25    The packaging of Betty Crocker Chocolate Chip Cookie Mix contains a
26 variety of useful product information.  Pursuant to federal regulations, *see* 21
27 C.F.R. § 101.7(a) (2016), the cookie mix's net weight is stated in bold type in the
28 bottom-right corner of the front label.  *See* Decl. of Rebecca Gustafson in Support

2

of Mot. to Dismiss ("Gustafson Decl."), Exs. A & B.  On the back label, at the top of the Nutrition Facts panel, the packaging discloses the number of servings per pouch and the individual serving size (in tablespoons and grams of mix), as is also required by federal law.  *See* FAC ¶ 3; Gustafson Decl., Exs. A & B; 21 U.S.C. § 343(q).  As part of the serving information, the Nutrition Facts panel also discloses the number of cookies that may be baked with each serving of mix.  *See* FAC ¶ 3; Gustafson Decl., Ex. A (showing each pouch contains 18 servings and each serving "makes 2 cookies"); Gustafson Decl., Ex. B (showing each pouch contains 22 servings and each serving "makes 1 cookie").

The expected cookie yield is also conspicuously displayed elsewhere on the back label.  On packaging sold during the past three years, a centrally-placed chart with baking instructions (describing oven temperature, bake time, etc.) states that each pouch produces 22–24 regular-size or 12 large-size cookies.  *See* Gustafson Decl., Ex. B.  Similarly, the earlier packaging reproduced in the FAC states, alongside a grid with bake-time information, that each pouch makes "3 dozen 2 inch cookies."  *See* FAC ¶ 3; Gustafson Decl., Ex. A.[1]

---

[1]  The FAC displays a back label of the cookie mix that was in circulation prior to the beginning of the limitations period, which started in November 2021.  *See* Gustafson Decl. ¶¶ 4–5; note 2 *infra*.  Plaintiff claims to have purchased the mix at some point within the limitations period.  FAC ¶ 4.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16
17
18
19
20
21
22
23
24
25
26
27
28



MEM. P. & A. ISO DEF. GENERAL MILLS, INC.'S MOTION TO DISMISS PL.'S FAC

Plaintiff does not allege any of these disclosures are false or inaccurate, or that the mix yielded fewer baked cookies than indicated on the packaging.

## B.    Plaintiff's Slack-Fill Allegations

Plaintiff contends in broad and vague terms that General Mills sells "chocolate chip cookie mix" (the relevant "Product" in the FAC) in "oversized packaging" with "substantial non-functional slack-fill." FAC ¶¶ 1, 3. Plaintiff alleges he purchased the cookie mix at some point during the three-year[2] "statute of limitations period," *id.* ¶ 4, and elsewhere notes he bought the mix "in the six months prior to filing" the FAC, *id.* ¶ 43(c). He does not otherwise specify when or how often he made his purchase(s). Plaintiff also represents he bought the mix somewhere "in Los Angeles County, California," *id.* ¶ 7, but again fails to provide specific purchase details, such as from what retailer he bought it. And, while Plaintiff alleges he relied on "the size of the package and product label" in purchasing the cookie mix, he does not explain whether he purchased a particular size of the mix or provide any information about the "price premium" he supposedly paid for it. *Id.* ¶ 4. Plaintiff also acknowledges he "is a consumer rights 'tester'" whose motivation for purchasing the cookie mix was in part "to enforce and advance consumer protection statutes." *Id.* ¶¶ 16–17.

Elsewhere, the FAC alleges generally, without reference to any specific features of the cookie mix packaging, that its size "leads reasonable consumers to believe they are purchasing a package full of product when, in reality, consumers are actually receiving significantly less." *Id.* ¶ 11. In defiance of common sense, Plaintiff asserts that information "about the quantity of product on the front and back labels of the Product does not enable reasonable consumers to form *any*

---

[2]    Both of Plaintiff's causes of action are subject to a three-year limitations period. *See* Cal. Civ. Code § 1783 (CLRA claims must be brought "not more than three years from the date" of the unlawful act); Cal. Civ. Proc. Code § 338(d) (actions for "fraud or mistake" must be commenced within three years).

1   *meaningful understanding* about how to gauge the quantity of contents of the

2   Product" and, specifically, that "[d]isclosures of net weight and serving sizes . . .

3   do not allow the reasonable consumer to make *any meaningful conclusions* about

4   the quantity of product contained in the Products' [*sic*] packages." *Id.* ¶¶ 14–15

5   (emphasis added).  Plaintiff also improbably alleges that, even if consumers "were

6   to 'shake' or otherwise inspect the packaging before opening it," they "would not

7   be able to discern the presence of any nonfunctional slack-fill." *Id.* ¶ 13.  Finally,

8   the FAC contains several paragraphs stating—again in broad and conclusory

9   terms—that none of the statutory "safe harbors" for functional slack-fill apply to

10  the cookie mix packaging.  *Id.* ¶¶ 19–30.

11      **C.    Procedural History**

12      Plaintiff filed his original complaint in this action on August 20, 2024, in

13  California state court and filed the FAC on November 15, 2024.  *See* ECF No. 1-2;

14  FAC.  While Plaintiff's original complaint asserted only individual claims, *see*

15  ECF No. 1-2 ¶ 48, the FAC is brought on behalf of himself and a putative class of

16  "[a]ll persons who purchased the Product in California for personal use during the

17  four years prior to the filing of" the FAC "to the present," FAC ¶ 31.[3]  Plaintiff

18  asserts claims for (1) common law fraud and (2) violation of the CLRA, Cal. Civ.

19  Code § 1750 *et seq.*  FAC ¶¶ 42–56.

20      Pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, General Mills

21  timely removed this action to this Court on December 11, 2024.  ECF No. 1.

22  **III.   LEGAL STANDARD**

23      To survive a motion to dismiss under Federal Rule of Civil Procedure

24  12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to

25  'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S.

26

27  [3]  Despite Plaintiff's proposed four-year class period, the statute of limitations

28  governing both of his claims is just three years.  *See* note 2 *supra*.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether the FAC passes muster, the Court must conduct a "context-specific" inquiry that "requires [it] to draw on its judicial experience and common sense." *Id.* at 679; *see also, e.g.*, *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal* in affirming dismissal of consumer class action concerning slack-fill). Although this Court must accept factual allegations in the FAC as true, it need not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678.

Courts also need not accept as true "allegations that contradict facts that may be judicially noticed by the court," *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and they "may look beyond the plaintiff's complaint to matters of public record" without converting a motion to dismiss into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Courts may grant motions to dismiss based on affirmative defenses, such as federal preemption, where the defense is "apparent from the face of the complaint" or "matters properly subject to judicial notice." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013) (internal quotations omitted).

## IV.    ARGUMENT

### A.    No Reasonable Consumer Would Be Deceived by the Cookie Mix Packaging, Which Discloses the Expected Cookie Yield.

Claims for false or misleading advertising under California's consumer protection statutes, including the CLRA, "are governed by the 'reasonable consumer' standard, which requires a plaintiff to show that members of the public are likely to be deceived by the defendant's marketing claims." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024) (internal quotation omitted); *see also Skinner v. Ken's Foods, Inc.*, 53 Cal. App. 5th 938, 948 (2020)

7

1  (similar).  It is not enough that a product's packaging "might conceivably be

2  misunderstood by some few consumers viewing it in an unreasonable manner."

3  *Ebner*, 838 F.3d at 965 (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th

4  496, 508 (2003)).  "Rather, the reasonable consumer standard requires a

5  probability 'that a significant portion of the general consuming public or of

6  targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Id.*

7  (quoting *Lavie*, 105 Cal. App. 4th at 508).  Plaintiff cannot make this showing.[4]

8          1.   *As the Ninth Circuit has recognized, reasonable consumers do*
              *not expect a product's contents to be identical to the size of the*
9              *packaging.*

10

11         The Ninth Circuit has issued only one published decision addressing slack-

12  fill allegations.  In *Ebner*, the court affirmed dismissal of CLRA and related claims

13  that the defendant's oversized lip treatment dispenser tubes and boxes "create[d]

14  the misleading impression that each unit ha[d] a larger quantity of lip product than

15  it actually contain[ed]."  838 F.3d at 962.  The court held it implausible as a matter

16  of law that a "reasonable consumer would be deceived as to the amount of lip

17  product" in a given tube because, *inter alia*, "an accurate net weight label [was]

18  affixed to" the product's packaging and "**no reasonable consumer expects the**

19  weight or **overall size of the packaging to reflect directly the quantity of product**

20  **contained therein**."  *Id.* at 965, 967 (emphasis added).  Following *Ebner*, district

21  courts considering motions to dismiss slack-fill claims thus take into account not

22

23  _____

    [4]  Because Plaintiff must plead a misrepresentation that is *actually false* and on
24  which he *justifiably relied* to state a claim for common law fraud, his failure to
    plead that reasonable consumers would be *misled* by the cookie mix packaging
25  necessarily defeats his fraud, as well as his CLRA, claim.  *See* Part IV.B *infra*.
    Similarly, because Plaintiff cannot plead that he suffered a cognizable injury
26  from the cookie mix packaging when he previously purchased it, he also cannot
    plead that he will suffer harm from the packaging in the future to state a claim
27  for injunctive relief.  *See* Part IV.D *infra*.

28

1  only accurate disclosures of product quantity but also consumers' general

2  awareness that a package's size often differs from the amount of usable product the

3  package contains.  *See, e.g.*, *Bush v. Mondelez Int'l, Inc.*, 2016 WL 5886886 at *3

4  (N.D. Cal. Oct. 7, 2016) ("Opaque containers with slack-fill at the top are common

5  in the snack market. . . . No reasonable consumer expects the overall size of the

6  packaging to reflect precisely the quantity of product contained therein.").

7              2.    *Courts regularly dismiss slack-fill claims where, as here, the*
                     *packaging discloses expected yield or product count.*
8

9        District courts in the Ninth Circuit have consistently held that where, as

10  here, a food product's packaging accurately discloses the product's net weight,

11  serving information, and *expected yield or individual product count*, a plaintiff's

12  slack-fill claims necessarily fail under the reasonable consumer standard.  This

13  Court should reach the same conclusion.

14        For example, in *Reider v. Immaculate Baking Co.*, 2018 WL 6930890 (C.D.

15  Cal. Nov. 8, 2018), the plaintiff claimed cake mix packaging was deceptive

16  because it contained more than 50% slack-fill.  *Id.* at *1.  The packaging, however,

17  displayed the cake mix's net weight on the front label and "the as-prepared yield of

18  cake" on the back label.  *Id.*  The court held such packaging was "not deceptive as

19  a matter of law" and dismissed the plaintiff's CLRA claim with prejudice,

20  explaining that "when a package indicates the numerical quantity of its contents"

21  and/or total yield, it is implausible that reasonable consumers would be misled as

22  to product quantity.  *Id.* at *2; *see also Bush*, 2016 WL 5886886, at *3 (rejecting

23  slack-fill claims where travel-size snack products "disclose[d] the net weight of

24  included product, as well as the number of cookies or crackers per container");

25  *Martinez-Leander v. Wellnx Life Scis., Inc.*, 2017 WL 2616918, at *8 (C.D. Cal.

26  Mar. 6, 2017) (same, where defendants "listed the exact number of pills each bottle

27  contains" on product labels).

28

1    Similarly, in *Buso v. ACH Food Cos.*, 445 F. Supp. 3d 1033 (S.D. Cal.

2    2020), the court rejected claims that a box of cornbread mix was deceptively

3    packaged based on excessive slack-fill where the box displayed "the product's net

4    weight," "the approximate number of servings per container," and an expected

5    yield of "one 8-in[ch] square 'loaf' of cornbread or 12 standard cornbread

6    muffins." *Id.* at 1038.  The court found that, because the packaging showed "the

7    rough estimate of cornbread that can be made from the product contained within

8    the box," the plaintiff's CLRA and related claims failed the reasonable consumer

9    test. *Id.*  Additionally, the court in *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d

10   1103 (S.D. Cal. 2021), used a similar guiding principle regarding claims of slack-

11   fill in pancake and waffle mix products.  The *Stewart* court held that plaintiffs

12   adequately pled consumer deception as to packaging that did *not* mention final

13   product output but "*could not* plausibly prove that a reasonable consumer would be

14   deceived . . . where the packaging *does* provide information about the final product

15   output." *Id.* at 1145 (emphasis in original).

16       Here, Plaintiff's claims are substantially indistinguishable from those in the

17   cases described above.  The cookie mix packaging conspicuously discloses the

18   mix's net weight, the number of servings per pouch, the size of each serving,

19   and—crucially—the expected yield of each pouch in terms of total baked cookies.

20   *See* FAC ¶ 3, Gustafson Decl., Ex. A ("Makes: 3 dozen 2 inch cookies");

21   Gustafson Decl., Ex. B  (each package yields 22–24 regular or 12 large cookies).

22   The yield information is conveyed in both chart form, as part of the packaging's

23   baking instructions, and via the serving information (since each serving

24   corresponds to a specific number of cookies).  *See* FAC ¶ 3; Gustafson Decl.,

25   Exs. A & B.

26       This information is more than sufficient to clarify for reasonable consumers

27   the amount of cookie mix within each pouch and to dispel any possible confusion

28   based on slack-fill.  *See Reider*, 2018 WL 6930890, at *2 (where "packaging

10

1   includes a conspicuous yield chart listing the number of certain size cakes that can

2   be made from one box of mix," consumers cannot reasonably expect the box "to

3   contain any more mix than the amount sufficient to make that much cake");

4   *Kennard v. Lamb Weston Holdings, Inc.*, 2019 WL 1586022, at *5–6 (N.D. Cal.

5   Apr. 12, 2019) (dismissing consumer deception claims where sweet potato fry

6   product disclosed its "net weight, the number of fries per serving, and the

7   approximate number of servings per container"); *Sinatro v. Mrs. Gooch's Natural

8   Food Markets, Inc.*, 2023 WL 2324291, at *11–12 (N.D. Cal. Feb. 16, 2023)

9   (dismissing claims where macaroni-and-cheese products "include[d] on their labels

10  the net weight, serving size, number of servings, preparation instructions, and,

11  most importantly, approximate yield").

12              3.    *The cookie mix's pliable packaging enables consumers to
13                    detect any slack-fill.*

14          In addition to being able to view the number of cookies each pouch of mix

15  makes, Plaintiff was able to manipulate the cookie mix and physically sense any

16  slack-fill that may have been present.  As the FAC's reproduced images make

17  plain, the mix is packaged in non-rigid, pliable pouches, allowing consumers to

18  discern any slack-fill they might contain through direct handling.  *See* FAC ¶ 3.

19  Courts often refer to the pliability of product packaging or the availability of

20  similar means for detecting slack-fill as a factor in dismissing consumer deception

21  claims.  *See Buso v. Vigo Importing Co.*, 2018 WL 6191390, at *5–6 (S.D. Cal.

22  Nov. 28, 2018) (where a product's packaging is soft and pliable, a consumer can

23  "feel[ ] the amount of product in the package when picking it up off the shelf and

24  [can]not plausibly be misled" as to the amount of product); *Kennard*, 2019 WL

25  1586022, at *7 (distinguishing pliable products from those in "a box or some other

26  kind of packaging not susceptible to manipulation," and expressing skepticism that

27  a "consumer could be plausibly misled by" the former); *ACH Food Cos.*, 445 F.

28  Supp. 3d at 1039 ("[B]y picking the cornbread mix off the shelf, a reasonable

11

1  consumer would inevitably feel the product and notice the product shifting within

2  the empty space of the box.").  These cases reflect the principle that a court ruling

3  on a motion to dismiss must "draw on its judicial experience and common sense,"

4  *Ebner*, 838 F.3d at 963 (quoting *Iqbal*, 556 U.S. at 679), and need not credit such

5  implausible claims as Plaintiff's assertion that even shaking the cookie mix would

6  not reveal the presence of slack-fill, *see* FAC ¶ 13.

7      In sum, the weight of the authority recognizes that reasonable consumers

8  "rely on serving size and product yield information as well as the feel of the

9  package to inform their purchasing decisions."  *Stewart*, 537 F. Supp. 3d at 1142.

10  The cookie mix packaging plainly displays the product yield and allows consumers

11  to feel its contents.  Because Plaintiff cannot plead facts to the contrary, his claims

12  should be dismissed without leave to amend.

### B.  Plaintiff Cannot Plead an Actionable Misrepresentation or Justifiable Reliance to Support His Common Law Fraud Claim.

15      As discussed elsewhere, Plaintiff's common law fraud claim should be

16  dismissed on the same grounds as his CLRA claim.  *See* Part IV.A *supra*; Part

17  IV.C *infra*.  But Plaintiff's fraud claim also fails for additional, independent

18  reasons.  *First*, as with Plaintiff's inability to satisfy the reasonable consumer

19  standard, he cannot plausibly allege the cookie mix packaging contains any

20  actionable misrepresentations, whether affirmative or tacit.  *See Rattagan v. Uber

21  Techs., Inc.*, 17 Cal.5th 1, 32 (2024) (the "elements of fraud" under California law

22  include a "misrepresentation" in the form of either a "false representation,

23  concealment, or nondisclosure") (quotation omitted).  The mix's labels

24  conspicuously display the product's net weight, number of servings per pouch,

25  individual serving size, and expected yield information; Plaintiff does not allege

26  any of these disclosures is inaccurate.  *See* Parts II.A & IV.A *supra*.  Just as no

27  reasonable consumer in view of this information would be misled as to the amount

28  of product in each package of cookie mix for purposes of the CLRA, the same

information cannot form the basis of a fraud claim.  *See Bush v. Mondelez Int'l, Inc.*, 2016 WL 7324990, at *5 (N.D. Cal. Dec. 16, 2016) (dismissing, *inter alia*, CLRA and fraud claims where plaintiff failed to plead deception under reasonable consumer standard); *Robles v. Gojo Indus., Inc.*, 2022 WL 2163846, at *7 (C.D. Cal. Mar. 16, 2022) (dismissing fraud claims based on same representations that underlay plaintiff's consumer protection claims, which failed reasonable consumer test), *aff'd*, 2023 WL 4946601 (9th Cir. Aug. 3, 2023).

This is especially true since, in contrast to California's consumer protection statutes, "which only require an allegation that members of the public are likely to be deceived by a defendant's conduct," a "common law fraudulent deception must be ***actually false***."  *Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1087 (N.D. Cal. 2022) (quotation omitted) (emphasis added); *see also In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009) (same).  Again, nowhere does Plaintiff claim any aspect of the cookie mix packaging is literally false (as opposed to merely misleading).  He thus fails to plead a fraudulent misrepresentation.  *See Nacarino*, 642 F. Supp. 3d at 1088 (dismissing fraud claim based on "an ambiguous description of the Product's protein content" that did not rise to "a false affirmation of fact").

Similarly, Plaintiff cannot plead justifiable reliance, as he must to state a claim for common law fraud.  *See Rattagan*, 17 Cal.5th at 32 (elements of fraud in California include "justifiable reliance").  Multiple courts applying analogous New York law to fraud claims have reached this conclusion.  In *Daniel v. Mondelez International, Inc.*, 287 F. Supp. 3d 177 (E.D.N.Y. 2018), the court dismissed both statutory consumer protection and fraud causes of action based on alleged slack-fill in the defendant's candy products.  *See id.* at 192, 198.  Indicating that the elements of common law fraud under New York law mirror those under California law, the court explained that "a plaintiff cannot establish justifiable reliance when, by the exercise of ordinary intelligence[,] [she] could have learned of the

information [she] asserts was withheld." *Id.* at 199 (quotation omitted).  Thus,

because the plaintiff there did "not dispute that the Product provided clearly visible

and accurate written labels as to net weight and quantity of candies," she failed to

plead reasonable reliance and her "common law fraud claim [was] foreclosed as a

matter of law." *Id.* at 199–200; *see also Daniel v. Tootsie Roll Indus., LLC*, 2018

WL 3650015, at *15 (S.D.N.Y. Aug. 1, 2018) (similar).  The same reasoning

applies here, and Plaintiff's cause of action for fraud should be dismissed for

failure to plead justifiable reliance.

### C.  Plaintiff Fails to Adequately Plead that Any Slack-Fill in the Product's Packaging Is Nonfunctional.

Plaintiff's CLRA and fraud claims also fail for the independent reason that

they are preempted by federal law, as they seek to hold General Mills liable for its

labeling and packaging practices despite those practices' compliance with

regulations promulgated under the Federal Food, Drug, and Cosmetic Act

("FDCA"), 21 U.S.C. § 301 *et seq.*

Slack-fill in food containers is governed by both federal and California law.

*See* 21 C.F.R. § 100.100 (1994) (stating that a container may be "misleading if it

contains nonfunctional slack-fill"); Cal. Bus. & Prof. Code § 12606.2 (same).

However, the FDCA expressly preempts any state law that would impose food-

labeling requirements different from those prescribed under the FDCA.  *See* 21

U.S.C. § 343-1(a) ("no State . . . may directly or indirectly establish . . . any

requirement for the labeling of food . . . that is not identical to the requirement[s]"

of 21 U.S.C. § 343(d), concerning misleading food containers).  Thus, in order to

assert an actionable state-law claim based on a food product's misleading labeling

or packaging, the claim "must be consistent with the FDCA"; otherwise, the claim

is preempted. *Jackson v. Gen. Mills, Inc.*, 2019 WL 4599845, at *6 (S.D. Cal.

Sept. 23, 2019); *accord* Cal. Bus. & Prof. Code § 12606.2(f) (stating California's

Fair Packaging and Labeling Act imposes requirements "identical" to those

14

imposed by the FDCA and its implementing regulations); Cal. Health & Safety Code § 110100 (adopting federal food labeling regulations as part of California's Sherman Food, Drug, and Cosmetic Laws).

Pursuant to 21 U.S.C. § 343(d), the Food and Drug Administration has issued a regulation defining slack-fill as "the difference between the actual capacity of a container and the volume of product contained therein." 21 C.F.R. § 100.100(a). The regulation provides that a "container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains *nonfunctional* slack-fill." *Id.* (emphasis added). "Nonfunctional slack-fill" is in turn defined as "the empty space in a package that is filled to less than its capacity for reasons" other than those enumerated in the regulation. *Id.* The permissible reasons include:

> (1) Protection of the contents of the package;
>
> (2) The requirements of the machines used for enclosing the contents in such package;
>
> (3) Unavoidable product settling during shipping and handling;
>
> (4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food) . . .
>
> (5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food . . . ; or,
>
> (6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling . . . ).

*Id.* § 100.100(a)(1)–(6). Federal law thus expressly provides that slack-fill is lawful if it serves any one of these six enumerated functions. *See Misleading*

15

*Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 64123-01, 64127 (Dec. 6, 1993) (rejecting "suggestion that functional slack-fill might be misleading" and finding that "slack-fill is justified when it performs a necessary function"); Cal. Bus. & Prof. Code § 12606.2(c)(1)–(6) (identifying the same "safe harbors" from claims based on slack-fill).

Pursuant to this regulatory framework, courts typically require plaintiffs to affirmatively plead specific facts showing a product's slack-fill is *not* attributable to any of the enumerated safe harbors and is entirely nonfunctional. *See, e.g.*, *Jackson*, 2019 WL 4599845, at *6 ("[T]he language of the [regulation] suggests that inapplicability of any of the six 'safe harbor' provisions is an element of the claim, because that is what renders ordinary slack-fill nonfunctional, and therefore both deceptive and actionable."); *ACH Food Cos.*, 445 F. Supp. 3d at 1040 (noting the Southern District of California has "held that a plaintiff must affirmatively plead in his complaint that the safe harbor provisions do not apply" and citing cases). Where, as here, a plaintiff's claims sound in fraud, his allegations regarding slack-fill's nonfunctionality are further subject to "Rule 9's 'particularity' standard for pleading." *Bush*, 2016 WL 7324990, at *4; *see also* Part IV.E *infra*.

Accordingly, district courts often deem allegations as to the non-functionality of slack-fill insufficient where plaintiffs effectively parrot the regulatory language and allege, in conclusory fashion, that the safe harbors are inapplicable. *See, e.g.*, *ACH Food Cos.*, 445 F. Supp. 3d at 1041 (complaint's "umbrella statement" that slack-fill was "used for no practical reason" was insufficient to plead that slack-fill was non-functional); *Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *6 (C.D. Cal. Oct. 17, 2018) ("[C]ourts have frequently dismissed slack-fill claims when the plaintiff makes only a conclusory allegation that the slack-fill is nonfunctional."); *Martinez-Leander*, 2017 WL 2616918, at *7 (rejecting slack-fill claims where complaint recited regulatory

16

1  language and alleged that slack-fill "lacked any lawful justification").  As these

2  cases make clear, a plaintiff must "plead *facts* showing that slack-fill is actionable

3  non-functional slack-fill within the meaning of the" federal law.  *Jackson v. Gen.*

4  *Mills, Inc.*, 2020 WL 5106652, at *2 (S.D. Cal. Aug. 28, 2020) (emphasis added).

5       Here, while Plaintiff refers to the six regulatory safe harbors, FAC ¶¶ 20–26,

6  his conclusory statements fail to establish any proper factual basis for his

7  overarching contention that slack-fill in the cookie mix is nonfunctional.  *See Bush*,

8  2016 WL 7324990, at *4 (holding allegations that slack-fill did not fall within safe

9  harbors "entirely conclusory" despite running some twenty paragraphs in an

10  amended complaint).  Plaintiff formulaically alleges, for instance, that slack-fill

11  "does not protect the contents of the packages" and that "empty space does not

12  protect the Product," FAC ¶ 20 (referring to 21 C.F.R. § 100.100(a)(1)), but offers

13  no reasoned basis for this claim.  *See Cordes v. Boulder Brands USA Inc.*, 2019

14  WL 1002513, at *3–4 (C.D. Cal. Jan. 30, 2019) (plaintiff failed to plead slack-fill's

15  nonfunctionality despite alleging that protection provision did not apply).  Given

16  this safe harbor exists to protect food contents from damage (during transit, for

17  example), it is at least as likely as not that any slack-fill in the cookie mix is for

18  this purpose.  Plaintiff thus fails to "nudge[ ] his claims" of nonfunctionality

19  "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

20       Similarly, Plaintiff argues the mix's slack-fill "is not the result of product

21  settling during shipping and handling" because "any settling occurs immediately at

22  the point of fill."  FAC ¶ 23 (referring to 21 C.F.R. § 100.100(a)(3)).  But, again,

23  he provides no support for this conclusory statement—despite the fact that courts

24  have stressed the significant role unavoidable settling can play in creating slack-

25  fill.  *See Jackson*, 2020 WL 5106652, at *3–4 (rejecting allegation settling could

26  not lead to more than 30% slack-fill for cereal products where federal guidance

27  states such foods "can settle by up to 43.1% after shipping") (quotation omitted);

28  *Bush*, 2016 WL 7324990, at *4 (describing allegation that slack-fill was not the

17

result of settling as "illogical and implausible" because settling "is a normal, unavoidable process for many types of food").  Further, Plaintiff's contention that the cookie mix packaging does "not perform a specific function that necessitates the slack-fill," FAC ¶ 24 (quoting 21 C.F.R. § 100.100(a)(4)), is again conclusory and merely parrots the regulatory language.  Indeed, Plaintiff fails to address that this safe harbor may apply where slack-fill "perform[s] the specific function of preventing spills when the customer opens" a bag of product, *Vigo Importing*, 2018 WL 6191390, at *5, which is another wholly plausible justification for any slack-fill in the cookie mix.

In sum, the FAC "does not allege facts to support the conclusion that the slack fill is nonfunctional, nor facts to allege the safe harbors do not apply." *ACH Food Cos.*, 445 F. Supp. 3d at 1041.  His state-law claims are thus preempted and should be dismissed with prejudice.

### D.    Plaintiff Lacks Standing to Seek Injunctive Relief.

In addition to damages and other forms of equitable relief, Plaintiff requests injunctive relief in the form of an "order requiring [General Mills] to add a conspicuous 'fill line' to the front of the Product's packaging sold in California." FAC, Prayer for Relief; *see also id.* ¶ 4 (stating Plaintiff "intends to purchase the Product in the future but cannot reasonably do so without an injunctive relief order" rendering the packaging "accurate and lawful").  This request should be rejected because Plaintiff has not plausibly alleged he will be harmed by the cookie mix packaging in the future, and so lacks standing for an injunction.

A defendant may seek dismissal of any "claim for relief" based on a court's lack of subject matter jurisdiction under Rule 12(b)(1).  "Article III standing is a threshold issue" that "pertain[s] to a federal court's subject-matter jurisdiction, and therefore is properly the subject of a Rule 12(b)(1) motion."  *Whitaker v. SQS LA LLC*, 2020 WL 3802908, at *1–2 (C.D. Cal. Apr. 1, 2020) (Wu, J.) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

18

1    "A plaintiff must demonstrate constitutional standing separately for each

2    form of relief requested."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967

3    (9th Cir. 2018) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC),*

4    *Inc.*, 528 U.S. 167, 185 (2000)).  To establish standing for injunctive relief,

5    plaintiffs must plead an ongoing or future "threat of injury" that is "actual and

6    imminent, not conjectural or hypothetical."  *Id.* (quoting *Summers v. Earth Island*

7    *Inst.*, 555 U.S. 488, 493 (2009)).  In *Davidson*, the Ninth Circuit held a plaintiff in

8    false labeling or advertising cases "may have standing" for injunctive relief in

9    certain circumstances, "even though the consumer now knows or suspects that the

10   advertising was false at the time of the original purchase."  *Id.* at 969.

11   Nevertheless, the court emphasized that "[w]here standing is premised entirely on

12   the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he

13   will again be wronged in a similar way'" to the past.  *Id.* at 967 (quoting *City of*

14   *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

15        Here, as in numerous other slack-fill cases decided after *Davidson*, Plaintiff

16   cannot plausibly establish "that he will again be wronged" by the cookie mix

17   packaging.  *Lyons*, 461 U.S. at 111.  In *Cordes*, for example, the court

18   distinguished the "nature of the deception" alleged in *Davidson* from that in a

19   typical slack-fill case.  2018 WL 6714323, at *4.  Whereas in *Davidson* "the

20   plaintiff could not easily discover whether a previous misrepresentation had been

21   cured without first buying the product at issue" (purportedly flushable wipes), a

22   slack-fill plaintiff "is on notice about potential underfilling" and can "easily

23   determine the [amount of product] in each package before making a future

24   purchase by simply reading the back panel" or by "feel[ing] the [package] to

25   determine whether it is filled with [product] or air."  *Id.*  The court thus held that

26   the plaintiff lacked standing to pursue injunctive relief.  *Id.*  Other courts have

27   adopted this line of reasoning in slack-fill cases and dismissed claims seeking

28   injunctions.  *See, e.g.*, *Jackson*, 2020 WL 5106652, at *5–6 (distinguishing

19

*Davidson*, which involved "product descriptions that cannot be verified merely by looking at the label," from slack-fill scenarios where a plaintiff "now knows she can ascertain the amount of [product] she is buying by looking at the label"); *Stewart*, 537 F. Supp. 3d at 1127 (similar).

This Court should likewise hold Plaintiff lacks standing for injunctive relief in the form of the requested fill line. As the FAC reveals, Plaintiff now knows the cookie mix is sold in packaging that did not correspond to his prior expectations about product quantity; that the pouches are not filled to the brim with mix; and that the packaging contains accurate disclosures as to net weight, serving information, and product yield. *See* FAC ¶¶ 1, 3, 15. Equipped with this knowledge, Plaintiff faces no credible "threat of repeated injury" or "likelihood that he will again be wronged in a similar way." *Davidson*, 889 F.3d at 967 (quotation omitted); *see also Gamez v. Summit Nats. Inc.*, 2022 WL 17886027, at *4–5 (C.D. Cal. Oct. 24, 2022) (rejecting likelihood of future harm where plaintiff "can check the size of [the] product packaging against information on the packaging including net weight, number of servings per container, and numbers of cookies per serving"); *Jackson*, 2020 WL 5106652, at *6 ("Whatever other customers might know or not know, [plaintiff] is on notice of facts in her own complaint."). Plaintiff's injunctive relief claim should be dismissed with prejudice.

**E.    Plaintiff's Claims Do Not Satisfy Rule 9(b)'s Heightened Pleading Standard.**

Finally, while Plaintiff's claims should be dismissed even under Rule 8, *see, e.g.*, Part IV.A, they independently fail because they are not pled with the necessary "particularity [as to] the circumstances" of General Mills's purported fraud. Fed. R. Civ. P. 9(b).

Under Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*,

20

317 F.3d 1097, 1106 (9th Cir. 2003)).  Rule 9(b)'s heightened pleading standard

governs fraud claims proper as well as "claims for violations of the CLRA"

because Rule 9(b) applies not only to claims where fraud is an essential element

but to any claim whose basis is an allegedly "unified course of fraudulent

conduct."  *Id.* at 1125 (citing *Vess*, 317 F.3d at 1103–04).  As a result, Plaintiff's

claims here are both governed by Rule 9(b).  *See, e.g.*, FAC ¶¶ 1, 52 (alleging

unified course of conduct whereby "Defendant dupes consumers into paying extra

for empty space" and "intentionally misrepresented and concealed material facts

from Plaintiff"); *Jackson*, 2020 WL 5106652, at *6 (ruling plaintiff's slack-fill

"claims sound[ed] in fraud" and so she was "obligated to plead supporting facts

with greater particularity").

Per Rule 9(b), the FAC is deficient in numerous respects.  *See* Part II.B

*supra*.  For example, Plaintiff alleges he purchased the cookie mix at some

indeterminate point during a multi-year "statute of limitations period" and/or "in

the six months prior to filing" (one of) his complaint(s).  FAC ¶¶ 4, 43(c).

Plaintiff similarly alleges he bought the cookie mix somewhere within "Los

Angeles County, California," *id.* ¶ 7, though he does not say where specifically.

Plaintiff also provides no detail about the particular version of the cookie mix he

purchased, including the product's size or any details about the labeling, despite

alleging that he "relied upon . . . the size of the package and product label" in

making the purchase.  *Id.* ¶ 4.  Indeed, Plaintiff does not even allege that the

images included in the FAC are those he saw and relied on—nor could he, as the

images do not correspond to any version of the cookie mix consumers could have

purchased in a retail store at any given time.  *See* Gustafson Decl. ¶¶ 3–4; Part II.A

*supra*.  Finally, Plaintiff fails to allege how much money he spent on the product,

even though he claims to have paid a "price premium" for it.  FAC ¶ 4.

The FAC is therefore insufficient as to the stringent requirements of Rule

9(b) and does not "provide [General Mills] with adequate notice" of the alleged

21

misconduct to defend against it.  *Kearns*, 567 F.3d at 1125; *see also Gamez*, 2022 WL 17886027, at *7–9 (granting motion for judgment on pleadings under Rule 9(b) where plaintiff alleged only that she purchased cookie product "for personal use during the class period," failed to allege "where she purchased the product," and did "not specify what variety of the product she purchased"); *Culver v. Unilever U.S., Inc.*, 2021 WL 10382839, at *6 (C.D. Cal. Jan. 21, 2021) (Wu, J.) (dismissing complaint under Rule 9(b) where it was unclear which specific products, labeling, or packaging plaintiff was challenging as misleading).  The Court should therefore dismiss the FAC as pled with insufficient particularity.

## V.    CONCLUSION

For the reasons given above, General Mills respectfully requests that the Court dismiss Plaintiff's FAC in its entirety and without leave to amend.

Respectfully submitted,

Dated:  January 10, 2025                    DTO LAW

By:_ /s/ Megan O'Neill_____
Megan O'Neill

Attorneys for Defendant
GENERAL MILLS, INC.

1

## **L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

2   The undersigned, counsel of record for Defendant General Mills, Inc.,

3   certifies that this Memorandum contains 6,692 words, which complies with the

4   word limit of Local Rule 11-6.1.

5

6   Dated:  January 10, 2025                    DTO LAW

7                                                        By: _/s/ Megan O'Neill_____

8                                                             Megan O'Neill

9
                                                            Attorneys for Defendant
10                                                          GENERAL MILLS, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28