## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 24-10664-GW-PDx | | Date | March 21, 2025 |
|---|---|---|---|---|
| Title | *Jesse Cantu v. General Mills, Inc.* | | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:    IN CHAMBERS - TENTATIVE RULING ON DEFENDANT GENERAL
MILLS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED CLASS ACTION COMPLAINT [15]**

Attached hereto is the Court's Tentative Ruling on Defendant's Motion [15] set for hearing on March
24, 2025 at 8:30 a.m.

|  | : |  |
|---|---|---|
| | Initials of Preparer | JG |

***Jesse Cantu v. General Mills, Inc.***; Case No. 2:24-cv-10664-GW-(PDx)
Tentative Ruling on Motion to Dismiss First Amended Complaint

      Before the Court is Defendant's Motion to Dismiss Plaintiff Jessee Cantu 's First Amended Complaint (the "Motion").  *See* Motion, Docket No. 15-1.  The Court has considered the Motion, Cantu's opposition ("Opp.," Docket No. 16), and Defendant's reply ("Reply," Docket No. 17).  For the reasons stated herein, the Court would **GRANT** the motion.

## I.     Background

      Cantu purchased a Betty Crocker Chocolate Chip Cookie Mix ("Mix") manufactured by General Mills, Inc. ("GM"), and contends that the size and labeling of the packaging misled him[1] as to the amount of mix contained within.  *See* First Amended Complaint ("FAC"), Docket No. 1-8 ¶¶ 3-4.  Cantu alleges that GM deliberately uses overlarge packaging to mislead consumers as to the quantity of the food product that they are purchasing, which in fact contains a substantial amount of empty space known as nonfunctional slack-fill.  *Id*. at  ¶¶ 9-11.  Cantu filed this action in the Superior Court of the State of California, Los Angeles County, on August 20, 2024, asserting two causes of action: (1) common law fraud; and (2) deceptive acts or practices in connection with the sale of goods under the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.  *See* Docket No. 1-2 ¶¶ 33-46.  Subsequently, Cantu amended his complaint to assert the same causes of action on behalf of a proposed class of California consumers who purchased the Mix during the four years prior to filing.  FAC ¶ 31.  Cantu seeks both damages and injunctive relief requiring GM to demarcate a "fill line" on its packaging of the Mix when sold in California.  *Id*. at 11.  GM removed to federal court on December 11, 2024.  *See* Docket No. 1.

      GM filed this Motion on January 10, 2025, alleging Cantu has failed to plausibly state either a CLRA or fraud claim, insufficient particularity in his pleading, lack of standing as to the claim for injunctive relief, and preemption.

## II.     Legal Standard

      Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint

---

[1] The FAC refers to Cantu with female pronouns.  FAC ¶ 31.  However, Cantu's opposition uses male pronouns, *see* Opp. at 2, so the Court has adopted them here.  The Court expects Cantu to clarify this issue at the hearing and/or indicate if Plaintiff has a preference.

may be dismissed under Rule 12(b)(6) for one of two reasons: (1) it lacks a cognizable legal theory; or (2) it alleges insufficient facts to support a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded allegations of material facts as true, and draw all reasonable inferences from the factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required, however, to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

## III. Discussion

### A. Judicial Notice

GM seeks judicial notice of various iterations of the Mix's packaging, dating to October 2018 (Docket No. 15-4), July 2021 (Docket No. 15-5), and April 2024 (Docket No. 17-3). *See generally* Request for Judicial Notice ("RJN"), Docket No. 15-2; Supplemental Request for Judicial Notice, Docket No. 17-1. GM contends that these labels qualify for judicial notice both under Federal Rule of Evidence 201 and under incorporation-by-reference doctrine. *Id*. Cantu objected to the initial RJN, contending judicial notice is inappropriate because Rule 201 does not apply and neither the October 2018 nor the July 2021 label exactly resembles what he purchased and so cannot form the basis of his claims. *See generally* Opp. to RJN, Docket No. 16-1.

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy

2

cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)(1)–(2)). Additionally, "[a]
court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers
to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the
authenticity of the copy." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

    The Court will take judicial notice of all three labels.  "Courts addressing motions to
dismiss product-labeling claims routinely take judicial notice of images of the product packaging."
*Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1098 (S.D. Cal. 2015).  Packaging is
evidently central to Cantu's claim, although there has been some confusion in the record as to the
specific packaging and labeling of the Mix that Cantu purchased.  The FAC includes an image that
resembles part of the October 2018 label (*see* FAC ¶ 3), and Cantu's Opposition utilizes both the
October 2018 and July 2021 label while asserting a description of the April 2024 label reflects the
Mix he purchased. *See* Opp. at 16-17.  The Court observes within the images provided in the FAC
unexplained inconsistencies: the top left image refers to "22 servings," but the bottom image states
that there are "18 servings."  FAC ¶ 3.  The top right image contains apparent differences from the
bottom image, both of which purportedly show the back of the package, including caloric quantity
and an image of a chocolate chip. *Id.*  The Court would like confirmation from Cantu at the hearing
as to whether the three images of the Mix included within the FAC all depict the product that Cantu
in fact purchased, and if not, how these images can support Cantu's claims and why actual images
of the product were not included within the FAC or any subsequent filing.

    Cantu has not objected to the authenticity of the labels, only their relevance. *See generally*
Opp. to RJN.  As such, the Court finds it appropriate to consider the labels to the extent that Cantu
relies upon them within his FAC and Opposition brief.

    **B.  Standing as to Injunctive Relief**

    "A plaintiff must demonstrate constitutional standing separately for each form of relief
requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Friends
of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000)).  "Where standing
is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood
that he will again be wronged in a similar way.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461
U.S. 95, 111 (1983)).

    GM contends that Cantu lacks standing for his requested injunctive relief because he cannot
show that he is at risk of repeated injury, now that he is on notice that the Mix does not meet his

expectations.  *See* Motion at 18-20.  In *Davidson*, the Ninth Circuit found that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase."  889 F.3d at 969.  Knowledge of past deception "does not equate to knowledge that [advertising or labeling] will remain false in the future."  *Id*.  The Ninth Circuit suggested that a plaintiff could establish standing for injunctive relief relating to deceptive advertising or labeling by showing they "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to," or alleging they "might purchase the product in the future" because they "reasonably, but incorrectly, assume the product was improved."  *Id*. at 969-70.

Some district courts have distinguished *Davidson* on the basis that the plaintiff in that case "could not easily discover whether a previous misrepresentation had been cured without first buying the product at issue," whereas plaintiffs who can "easily determine" the quantity of a product "in each package before making a future purchase by simply reading the back panel" after they are "on notice about potential underfilling" lack standing when they do not explain why they cannot simply read and rely upon the label in the future.  *Cordes v. Boulder Brands USA, Inc*., No. 18-cv-6534-PSG-(JCX), 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018); *see also Sinatro v. Mrs. Gooch's Nat. Food Markets, Inc.*, No. 22-cv-03603-TLT, 2023 WL 2324291, at *9 (N.D. Cal. Feb. 16, 2023).  Other courts find this "assumes too much," namely that the plaintiff "will recall the exact details of the label and the size and feel of the [product] during handling such that she could accurately compare the allegedly deceptive [product] against any new [version of the product] she encounters in the future."  *Reyes v. Just Born, Inc*., 729 F. Supp. 3d 971, 975 (C.D. Cal. 2024); *see also Milan v. Clif Bar & Co*., 489 F. Supp. 3d 1004, 1007 (N.D. Cal. 2020) (declining to find as a matter of law that plaintiffs would not be deceived again by product even though they were now aware of nutritional facts).

The Court finds the latter position more consistent with the Ninth Circuit's approach in *Davidson*.  Cantu avers that he "intends to purchase the Product in the future," which is sufficient to establish threat of repeated injury as challenged by GM here.  FAC ¶ 4.  Therefore, the Court denies GM's motion to dismiss Cantu's claim for injunctive relief on this ground.

### C.  Federal Rule of Civil Procedure 9(b)

A party alleging fraud "must state with particularity the circumstances constituting fraud."

Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted). "If a plaintiff's CLRA claim alleges a "course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim," the CLRA claim "must satisfy the particularity requirement of Rule 9(b)." *Id*. at 1125.

The Court agrees with GM that Cantu's CLRA claim sounds in fraud. Motion at 21; FAC ¶¶ 1, 52-53 (alleging GM "dupes consumers" and engages in knowledgeable and deliberate deception). Cantu does not appear to dispute that he alleges that GM is engaging in fraudulent conduct but contends that he has met the heightened pleading standard. Opp. at 2-4.

The Court finds that Cantu has failed to meet his burden of particularity here sufficient "to provide defendants with adequate notice" as Rule 9(b) is meant to ensure. *Kearns*, 567 F.3d at 1125. Cantu contends that the "what" is "the nonfunctional slack-fill in the packaging of Defendant's Product." Opp. at 3. But Cantu has wavered with respect to key details regarding the specific variety of the Mix he purchased and the packaging that it came within; as mentioned, *supra*, the images included within the FAC are inconsistent with the description of the Mix in Cantu's opposition brief, and Cantu has produced no images consistent with the packaging description he now alleges. *See* FAC ¶ 3; Opp. at 16-17. Additionally, Cantu has not specifically alleged the amount of nonfunctional slack-fill (*e.g*., the percentage of the package that is nonfunctionally empty), only that it is "substantial" and the package as a whole is "over half empty." FAC ¶¶ 3, 43. The opposition brief alleges an "approximately two-thirds fill level," which is more precise, but inconsistent with the FAC's "half empty" contention. *See* Opp. at 9. This has put GM in the unfair position of having to engage in guesswork to refute Cantu's allegations.

The "how" is also deficient. Cantu contends that the allegation of misrepresentation as to size is itself sufficient. Opp. at 3. The problem is that Cantu has not specified what the actual size of the Mix was, how what the Mix ultimately yielded differed from his expectations, or even what Cantu's expectations as to the Mix's yield were. Cantu avers that he "would not have purchased the Product had [he] known that the Product contained slack-fill that serves no functional or lawful purpose." FAC ¶¶ 15, 18. These allegations are "threadbare," and do not meaningfully provide an understanding of how the slack-fill harmed Cantu. *Culver v. Unilever United States, Inc*., No. 19-cv-9263-GW-(RAOx), 2021 WL 10382839, at *7 (C.D. Cal. Jan. 21, 2021).

Finally, the "when" (within "six months prior to filing," FAC ¶ 43) and "where" ("in Los Angeles County," *id*. at ¶ 7) are not plead with sufficient particularity within the FAC. *Gamez v. Summit Nats. Inc*., No. 22-cv-05894-DSF-(KSx), 2022 WL 17886027, at *8 (C.D. Cal. Oct. 24, 2022) (plaintiff failed to plead with particularity where complaint made "no allegations about where she purchased the product" and "fail[ed] to identify any dates in her complaint"). The timing may be particularly relevant here in clearing up the confusion concerning the Mix packaging. Cantu avers for the first time in his response to GM's RJN that the Mix was purchased at a "retail California Ralphs Grocery supermarket . . . in the summer of 2024." Opp. to RJN at 2. This specificity comes closer to the particularity required.

The Court would thus **GRANT** the Motion with leave to amend. However, the Court finds it prudent to address the reasonable consumer test, a central legal issue discussed by the parties' briefings that necessarily bears on any amended complaint Cantu would file, and does so assuming *in arguendo* Cantu had furnished his complaint with the requisite detail.[2]

### D. Reasonable Consumer Test

"[C]laims under the California consumer protection statutes are governed by the 'reasonable consumer' test." *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016). "Under this standard," a "[p]laintiff must show that members of the public are likely to be deceived." *Id*. (internal quotation marks omitted). Meeting this standard "requires more than a mere possibility" that packaging or labeling "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner," and is met when there is a "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id*. (internal quotation marks omitted). "Common law fraud claims regarding misleading product packaging employ a similar reasonable consumer standard." *Oh v. Catalina Snacks, Inc*., No. 2:24-cv-08625-SVW-(MAR), 2025 WL 352776, at *4 (C.D. Cal. Jan. 29, 2025); *see also Ham v. Hain Celestial Grp*., *Inc*., 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (explaining that the reasonable consumer standard "also applies to common law fraud" claims).

---

[2] The parties' filings also discuss at length GM's arguments that Cantu's claims are preempted by the safe harbors within the Food, Drug, and Cosmetic Act (21 U.S.C. § 301 *et seq*.) and Cantu must "affirmatively plead specific facts showing a product's slack-fill is not attributable to any of the enumerated safe harbors and is entirely nonfunctional" but has failed to do so. Motion at 14-18; Reply at 14-18. Cantu argues both that the safe harbors are affirmative defenses for which the defendant has a burden and provides additional argument that no safe harbor applies. Opp. at 5-9. The Court declines to resolve this issue given its findings as to Rule 9(b) and the reasonable consumer standard.

GM argues that the FAC necessarily fails the reasonable consumer test because (1) reasonable consumers are aware of slack-fill and do not anticipate the product packaging to accurately translate to the actual product quantity; (2) the packaging discloses the expected yield or product count; and (3) consumers can feel the product quantity and detect slack-fill because it is packaged in a pliable pouch. *See* Motion at 8-12. Cantu contends that these are factual issues improper for resolution at the motion to dismiss stage, and that disclosures made on the packaging do not cure the alleged deception of the packaging size. *See* Opp. at 9-17. Additionally, Cantu disputes that consumers can feel the product quantity because it is inflated with gas. *Id*. at 18.

As to GM's first and third points, the extent of a reasonable consumer's awareness of slack-fill, general understanding of the relationship between product packaging and actual quantity, and ability to detect slack-fill or not due to the presence of gas present factual issues not properly resolved at the motion to dismiss stage. To be sure, a reasonable consumer does not expect packaging to "directly" or "precisely" reflect the quantity of food product therein. Motion at 8-9. But Cantu does not contend that the Mix's packaging and quantity need to have a one-to-one ratio; rather, he suggests that there is some "significant" amount of nonfunctional slack-fill that crosses the line into misleading consumers. FAC ¶ 13. The determination of where that line falls, and whether the Mix crosses it, is a factual question improper for resolution at this juncture.

However, the packaging disclosures recontextualize Cantu's entire claim. As discussed *supra*, there is some dispute as to the specific Mix that Cantu purchased and thereby the representations regarding the weight, serving, and yield information thus made. *See* Declaration of Rebecca Gustafson ("Gustafson Decl."), Docket No. 15-3 ¶ 3; Opp. at 16-17. However, both the images provided in the FAC and the version of the packaging Cantu describes in his opposition brief indicate some disclosure as to yield. The images within the FAC disclose that the Mix "[m]akes: 3 dozen 2 inch cookies." FAC ¶ 3. The version of packaging Cantu now alleges to have purchased approximates a yield of "22-24 Regular" or "12 Large" cookies, depending on tablespoon amounts. Opp. at 16-17. As such, GM argues that no reasonable consumer could be misled as to the amount of Mix they were purchasing. Motion at 9-10. Cantu largely responds to GM's disclosure arguments with caselaw holding that net weight and serving information do not dispel misleading packaging because average consumers do not process this type of information and base conclusions about the quantity of product they are purchasing upon them. Opp. at 10-15.

As the string of cases both parties cite in their favor indicates, "courts come out both ways"

7

on whether a reasonable consumer can be misled by product packaging that contains some accurate information regarding the quantity of product therein. *Reyes*, 729 F. Supp. 3d at 974. Some hold that "even if a product's packaging accurately displays its weight, it does not mean that the way in which the product was packaged may not be misleading." *Escobar v. Just Born Inc*., No. 17-cv-01826-BRO-(PJWx), 2017 WL 5125740, at *10 (C.D. Cal. June 12, 2017); *see also Gordon v. Tootsie Roll Indus., Inc*., No. 17-cv-2664-DSF-(MRWx), 2017 WL 8292777, at *4 (C.D. Cal. July 31, 2017) ("a reasonable consumer . . . may not necessarily be aware of how the weight of product or number of pieces correlates to the physical amount of product, and thus may still expect a package to be more than 55% full despite accurate weight and product count labeling on the package"). Other courts hold that certain information conveyed on the packaging creates expectations in the reasonable consumer, as opposed to the packaging size, particularly where the product is a type for which consumers expect information indicating an approximate yield when prepared. *See, e.g., Reider v. Immaculate Baking Co*., No. 8:18-cv-01085-JLS-(AS), 2018 WL 6930890, at *2-3 (C.D. Cal. Nov. 8, 2018); *Sinatro*, 2023 WL 2324291, at *11.

Notably, there appears to be a salient distinction drawn within the caselaw between information that merely conveys weight or serving size, which a reasonable consumer could find abstract as compared to the product's physical size in forming expectations as to product quantity, and information that conveys yield. *See Sinatro*, 2023 WL 2324291, at *11 (reconciling slack-fill cases by finding that "the inquiry . . . is whether the content on the label is sufficient to convey to a reasonable consumer the amount of product in the package, such that any alleged deception from the allegedly oversized package is dispelled" and finding that a reasonable consumer would "look for and rely on approximate yield information"); *Catalina Snacks*, 2025 WL 352776, at *5 (distinguishing "total weight" and "servings" information, which do "little to inform consumers," from packaging that indicated "the amount of [] loaves" a "mix could make"); *Reider*, 2018 WL 6930890, at *2 (emphasizing that box of mix had a "conspicuous yield chart" and finding it "difficult to see how a reasonable consumer could expect a box . . . to contain any more mix than th[at] amount"). Every iteration of the Mix packaging at issue contains some approximation of yield, and as such, the Court finds that this information forms a reasonable consumer's expectations as to the quantity of Mix and how much it will yield, not the size of the packaging.

Cantu makes two arguments regarding yield approximation. First, he cites cases holding that that the number of pieces on product labeling is insufficient to dispel a potentially misleading

packaging size at the pleadings stage. *See* Opp. at 10-16 (citing *Gordon*, 2017 WL 8292777, at \*4; *Cordes*, 2018 WL 6714323, at \*7). However, baking mixes are different from boxes of candy and bags of pretzels; while consumers may be unlikely to conceptualize a certain number of tiny units as the quantity of product they will receive, a reasonable consumer of baking mixes looks for "how much prepared [final product] the mix ultimately produces." *See Reider*, 2018 WL 6930890, at \*3; *Buso v. ACH Food Companies, Inc.*, 445 F. Supp. 3d 1033, 1039 (S.D. Cal. 2020) (describing the "vital information" to consumers as "how much prepared cornbread the mix can inevitably produce").

Next, Cantu appears to concede that "3 dozen 2 inch cookies" is a yield approximation upon which a reasonable consumer would rely, but argues that "22-24 Regular" or "12 Large" cookies is too vague to put consumers on notice, and this packaging (as opposed to what was alleged within FAC ¶ 3) was what he purchased. Opp. at 16-17. The Court is unpersuaded that the yield approximation need be exact for it to create reasonable expectations of a cookie mix's quantity, and a "rough estimate" suffices. *See Buso*, 445 F. Supp. 3d at 1038; *Sinatro*, 2023 WL 2324291, at \*11-12 ("approximate yield information" in units appropriate for preparation put consumers on notice regarding amount that could be produced).[3] While Cantu quibbles with the fact his "package was mostly empty," he has made no allegation that the Mix produces less yield than it promises. FAC ¶ 16; *cf. Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 910 (C.D. Cal. 2021) (allegation that coffee canister only yielded half of what packaging promised when prepared as instructed adequately stated CLRA claim). As such, his CLRA claim fails to meet the reasonable consumer test as a matter of law. The same goes for the requirement of an actionable misrepresentation in Cantu's common law fraud claim. *See* FAC ¶ 42; *Robles v. Gojo Indus., Inc.*, No. SACV21928JVSDFMX, 2022 WL 2163846, at \*7 (C.D. Cal. Mar. 16, 2022), *aff'd*, No. 22-55627, 2023 WL 4946601 (9th Cir. Aug. 3, 2023) (dismissing common law claim that "rel[ied] on the same alleged misrepresentations" as those that failed the reasonable consumer test as an "unreasonable interpretation" of product packaging). Any amended complaint must necessarily address yield and cannot solely rely upon packaging size as Cantu presently does. *See* Opp. at 3.

---

[3] Cantu's citation to *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103 (S.D. Cal. 2021) is unavailing. In *Stewart*, the court found "it plausible that the reasonable consumer is unlikely to convert cylindrical cups plus other ingredients into the approximate product yield of the finished pancakes, waffles, or other baked goods." 537 F. Supp. 3d at 1143. But here, even in the packaging to which Cantu now objects, an "approximate product yield" *is* provided and a consumer would not need to engage in any complex calculations to form conclusions about anticipated yield.

## IV.    <u>**Conclusion**</u>

Based on the foregoing discussion, the Court would **GRANT** the Motion with leave to amend, provided Cantu presents a viable claim in accordance with the Court's above findings.